UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


SPX CORPORATION,
a Delaware corporation,


              Plaintiff,                            CASE NO. 06-14888

vs.

                                            DISTRICT JUDGE DAVID M. LAWSON
                                            MAGISTRATE JUDGE STEVEN D. PEPE


BARTEC USA, LLC, a Michigan company,
BARTEC AUTO ID LIMITED, a United Kingdom corporation,
SCHRADER-BRIDGEPORT INTERNATIONAL, INC.,
A Delaware corporation, GENERAL PARTS, INC.,
A North Carolina corporation, and
MYERS TIRE SUPPLY DISTRIBUTION, INC.,
An Ohio corporation,

              Defendants.
_____/


## OPINION AND ORDER GRANTING PLAINTIFF'S MOTION TO EXCLUDE BARTEC'S INTENTIONALLY LATE DISCLOSURE(DKT. #128)

In this patent infringement action, Plaintiff SPX Corporation ("SPX") alleges that the

Defendants infringe the rights of U.S. Patent No. 6,904,796 to Pacsai *et al.* ('796).[1]  Plaintiff

claims that the Bartec DBL, DEG, and DSW tools (the accused tools) infringe '796.  Plaintiff

alleges that the sale of the Bartec DBL and the Bartec DEG tools infringes claims 1, 4, 7-12 and

---

[1] The primary Defendants in this case are Bartec USA, LLC and Bartec Auto ID,
Ltd. As the name implies, these are related entities. The owners of Bartec Auto
ID, Ltd. also own Bartec USA, LLC.  Bartec USA, LLC was the sole and original defendant
in this action filed October 30, 2006. After learning that Bartec USA, LLC was a shell
company in the United States for Bartec Auto ID, Ltd., based in the United Kingdom, SPX
amended the Complaint on April 2, 2007, to add Bartec Auto ID, Ltd.

17-19, and that the sale of the Bartec DSW infringes claims 1, 4, 7-12 and 20-22. Defendants have counterclaimed that '796 is invalid and not infringed.

On October 23, 2007, SPX moved pursuant to Fed. R. Civ. P. 37(b) for sanctions in the form of exclusion against Defendant Bartec USA, LLC ("Bartec") for its allegedly intentionally late disclosure of its invalidity positions (Dkt. #128).[2] Plaintiff's motion was referred for hearing and determination on November 15, 2007, pursuant to 28 U.S.C. § 636(b)(1)(A) (Dkt. #137). A hearing was held on December 5, 2007, at which all unresolved issues were heard. At the hearing, the parties were asked to provide supplemental briefing regarding the dates when Bartec learned of the prior art at issue, so this Court could determine whether it was diligent in its supplementation. Defendant filed its supplemental brief on December 14, 2007 (Dkt. #148), and Plaintiff filed a response on December 19, 2007 (Dkt. #151). For the reasons stated on the record and indicated below, it is **ORDERED** that Plaintiff's motion is **GRANTED.**

## I.    BACKGROUND FACTS

On March 6, 2007, SPX moved to compel a complete response to its Interrogatory No. 1 seeking the factual and legal basis of Bartec's invalidity positions (Dkt. #13).[3] Bartec supplemented its response before the hearing (Dkt. #128, Ex. 2), but was ordered to provide

---

[2] Because Bartec Auto ID, Ltd. was not yet formally a party to the earlier motions filed in this case, and subsequent Court Orders, Plaintiff is not pursuing sanctions against them (Dkt. #148, Ex. A, 12/5/07 Hearing Transcript ("Transcript"), p. 13:13-18).

[3] The interrogatory at issue was directed to Bartec USA, LLC, but as soon as Bartec Auto ID, Ltd. was served, a substantially identical interrogatory was served on Bartec Auto ID, Ltd. Bartec Auto ID, Ltd. provided an answer mirroring that of Bartec USA, LLC providing detailed explanations of its invalidity defenses and charts explaining them (Dkt. #128, Ex. 5). Bartec Auto ID, Ltd. has the same owners and same counsel as Bartec USA LLC, but required SPX to serve it through the Hague Convention.

more detailed responses (Dkt. #25).  The pertinent section of this Court's April 18, 2007, order states:

> 3. Interrogatory #1: In its supplemental response to Interrogatory #1, Defendant provided Plaintiff only with an identification of its positions on invalidity and the prior art relied upon in its supplementation. Defendant shall supplement its responses to indicate an application to the claims of the patents in suit on an element-by-element basis with reference to page numbers from each reference where the particular element may be found as discussed at the hearing (April 12, 2007, Hearing Transcript, at pp15-17).
>
> Defendant also claims in response that "aspects of the tool method claimed in U. S. Patent No. 6,904,796 are vague and/or inadequately described." While Defendant provides a broad identification of its defense, its does not provide Plaintiff with the complete factual and legal basis for its allegations. Defendant shall supplement its answer with specific reference to the relevant paragraphs 1-6 of 35 U.S.C. § 112.

On May 25, 2007, SPX moved for sanctions alleging Bartec did not properly comply with the undersigned's order requiring a more detailed response (Dkt. #47).  While sanctions were not imposed, Bartec was ordered to provide further and more detailed invalidity responses (Dkt. #74).  The pertinent sections of this Court's July 11, 2007, order state:

> 1. SPX shall identify particular prior art references and claim limitations of claim 1 of the U.S. Patent No. 6,904,796, as broken out in Table 1 of Bartec's Third Supplemental Response to SPX Interrogatory No. 1.
>
> 2. Within ten calendar days from this identification by SPX, Bartec shall identify the primary sentence, paragraph or specific portion of any figure, schematic or image that Bartec relies upon to demonstrate that the identified limitations of claim 1 are disclosed in the particular reference.

On October 5, 2007, Bartec served its Expert Report on invalidity (Dkt. #128, Ex. 6).[4] The Expert Report discusses 12 alleged prior art references — only four of the 12 were identified in Bartec's interrogatory responses on invalidity (Compare Dkt. #128, Ex. 6, Liepa Expert

---

[4] In the Expert Report, Dr. Liepa indicates that he has been retained by Defendants Bartec USA, LLC and Bartec Auto ID, Ltd. on behalf of all the Defendants.

Report, pp. 5-12 and Dkt. #128, Ex. 1, pp. 5-7). Defendants' Expert, Valdis Liepa, Ph.D., did not locate these references, instead he states simply: "At the request of the lawyers for Defendants, I have reviewed the documents" alleged to be prior art (Dkt. #128, Ex. 6, p. 1). This Expert Report also contained references to two BXR manuals that formed the basis for some of Defendants' invalidity contentions. Plaintiff argues that Bartec never charted either of the two documents nor made them aware to Plaintiff's counsel in any other fashion in response to Interrogatory No. 1 seeking invalidity positions.

On October 15, 2007, SPX received 200,000 documents on CDs from Bartec (Dkt. #128, Ex. 7, Doerr letter referencing Bates Nos. 22,218—221,653). These documents were removed from their native format and .tif files were created, which are unsearchable. This production of documents was 10 times the amount of documents that Bartec had previously produced. On Thursday, October 18, 2007, three days removed from this large production, SPX was scheduled to depose Mr. Charles Beal, an owner of both Bartec USA, LLC and Bartec Auto ID, Ltd.[5] On Wednesday, October 17, 2007, after the close of business, Bartec hand delivered a package to SPX that included additional documents, supplemental interrogatory responses and an objection to the 30(b)(6) notice (Dkt. #128, Ex. 8).

Defendant Bartec Auto ID, Ltd.'s supplemental interrogatory responses identified some of the alleged prior art from the report of Bartec's Expert (Dkt. #128, Ex. 1, p. 7).[6] Most

---

[5] SPX was also planning on taking the 30(b)(6) deposition of Bartec Auto ID, Ltd. and the individual deposition of Mr. Colin Webb.

[6] In the objection to the 30(b)(6) notice, Bartec stated that it will provide a deponent at a later date for most topics, but that Mr. Charles Beal would testify regarding Bartec's own activities that were disclosed to SPX just hours ago.

troubling to Plaintiff is that the supplemental interrogatory responses disclosed for the first time assertions that the '796 patent is "anticipated and/or rendered obvious by Bartec's own activities." (Dkt. #128, Ex. 1, p. 7). The response then goes through a dialogue for two pages about Bartec's "own activities." No documents were identified, and no factual or legal bases for the claims of anticipation or obviousness were provided.

During the deposition, Mr. Beal — an owner of Bartec — explained that he was fully aware of all of these asserted Bartec activities when they occurred, that Bartec lawyers had the information for almost a year, but could not explain why the responses were only provided to SPX now.

Q. Now, we've talked so far about all these events that happened in 2002 and earlier —

A. Yes.

Q. -- in your interrogatory response?

A. Yes.

Q. You were in possession of all these facts that you claim to be in possession of today when they occurred five, six and seven years ago, right?

A. Yes.

Q. Is there a reason why this interrogatory was only drafted to us yesterday?

A. Which interrogatory?

Q. The one that we've been reading there.

A. This one here?

Q. Yes.

A. I can't answer that.
Q. You don't know?

A. No.

Q. Don't you think it would have been important to give it to us early?

A. I'm not a lawyer.

Q. Oh, your lawyers did this?

A. This document?

Q. Yes.

A. Lawyers did this, yeah.

Q. But you [had] the facts to support all of this stuff when they happened?

Mr. Doerr: Objection, asked and answered

Q. With you notes and everything, right, sir?

A. Yeah. I had the information to help them draft this.

And they had the information to draft this.

Q. Many, many months ago?

A. Yeah, I expect so.

(Dkt. #128, Ex. 9, Beal Deposition, pp. 297-98; *see also*, p. 32 testifying that Bartec's lawyers "have had all this information in one form or another, so – Q. For the last almost year, right? A. Yes).

At the hearing, the Court inquired as to whether Bartec USA and Bartec Auto ID, Ltd.

had seasonably amended their interrogatory answers subject to the disclosure obligations under

Fed. R. Civ. P. 26(e) and specifically asked two questions:

(1) When would Defendants be deemed to have knowledge of the prior art?

(2) When would Defendants with the exercise of reasonable diligence have had reason to know that they would be able to contend this was invalidating prior art and therefore relevant and subject to the disclosure obligations under Rule 26(e) to seasonably amend?

(Dkt. #148, Ex. A, 12/5/07 Hearing Transcript ("Transcript"), p. 24:4-14).

As noted above, this Court ordered additional briefing following the December 5, 2007, hearing. The exchange on pages 44-45 of the hearing's transcript captures the purpose of this supplemental briefing.

> The Court: . . . but you surely knew and had anticipations or hopes and aspirations that this was going to lead to an invalidity claim. I assume that's why you were doing some of the screening as to what to present to him.
>
> Mr. McClaughry: I had hopes that –
>
> The Court: If you weren't it seems to me you weren't doing your job.
>
> Mr. McClaughry: I had hopes that there were a lot of things some of which turned out in his mind not to be that way. So at what point does it become a– a contention. And – and at that point I believe it was seasonably supplemented.
>
> The Court: Well, I mean –
>
> Mr. McClaughry: And – and – I means if its – if the Court is looking for dates, exact dates, I – I don't know if we can find that out or not. **I can look and I could provide a supplemental brief to – to that point.**
>
> The Court: Okay. I mean I'll be glad to let – let you do that if you want to – will seven days be enough for you.

(Transcript, pp. 44-45; boldface added).

In Bartec's supplemental response, it indicates initially the source of prior art relied upon by Defendants "consisted of prior art originally relied upon for the opinion of counsel letter as well as some prior art identified in the initial searching conducted in February-April" (Dkt. #148, p. 4). Defendants (and its counsel) had periodically reviewed these references for purposes of responding to and supplementing the invalidity contentions between February and June, and Defendants' Expert had reviewed these references in early to mid August. *Id.* Periodically,

additional prior art searching was conducted in mid-June, mid-July and mid to late August. *Id*.

The last prior art searching was conducted in late September. The prior art references located as

a result of those searches were produced to opposing counsel on July 10, 2007, August 30, 2007,

and October 9, 2007, respectively. *Id.* A summary of these dates are set forth in Table B

attached at Exhibit C to Bartec's submission (Dkt. #148, Ex. C).

Based upon Bartec's supplemental submission, SPX does not seek exclusion of any item

of prior art that was disclosed to SPX during the discovery period in the manner required by the

Court's April 18, 2007, and May 25, 2007, orders. This leaves the Court to consider two items:

(1) Bartec's "own activities" as presented in the October 17, 2007, Supplemental Interrogatory

Response (Dkt. #151, Ex. A, pp. 7-9), and (2) Bartec's two manuals its Expert relied upon as

"printed publications."

## II.  ANALYSIS

### A.  <u>Legal Standards</u>

In pertinent part, Fed. R. Civ. P. 26(e) provides:

**(1) In General**. A party who has made a disclosure under Rule 26(a) — or who has responded to an interrogatory, request for production, or request for admission — must supplement or correct its disclosure or response:

> **(A)** in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or

> **(B)** as ordered by the court.

Fed. R. Civ. P. 37(c)(1) notes:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence

on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

In *ATD Corp. v. Lydall, Inc*., 159 F.3d 534 (Fed. Cir. 1998), the Federal Circuit affirmed a pretrial order of District Judge Rosen excluding a prior art patent as evidence of invalidity of the patent-in-suit for failure to have timely disclosed such prior art patent by the date assigned in the applicable pretrial order. The *ATD* Court observed: ". . . a specific judicial directive for the timing of discovery establishes the procedures to which the parties are bound." *Id.* at 551. As recognized by the Federal Circuit, invalidity positions must be disclosed so that the patentee can take the appropriate discovery.

Another case with a close factual parallel is *STMicroelectronics, Inc. v. Motorola, Inc.*, 307 F. Supp. 2d 845 (E.D. Tex. 2004). In *STMicroelectronics*, the patent challenger sought leave to file supplemental invalidity contentions after the due date for these contentions under the local court rule. In a failed effort to show "good cause," the patent challenger stated that its "continuing investigation revealed additional [information]." *Id.* at 850. The Court found that this "amounts to no statement at all," because the patent challenger did not explain (i) what new information its "investigation" revealed, (ii) what diligence was used prior to the required disclosure date, or (iii) why that diligence was not sufficient. *Id*. at 850-51. The *STMicroelectronics* Court refused to grant leave, remarking:

> The Court will not allow litigants to so ignore its orders. The Patent Rules, as part of the Court's docket control order, are an order of this Court that litigants are not free to ignore.

*Id*. at 852.

## B.  Factual Analysis

## 1.  "Bartec's Own Activities"

It is apparent that Bartec knew of its "own activities" when they occurred, and that the relevant information was provided to Bartec's counsel, Harness, Dickey and Pierce by early 2007. As noted above, Charles Beal, an owner of Bartec USA and Bartec Auto ID, Ltd. testified that he was fully aware of all of these asserted Bartec activities when they occurred, and that Bartec's counsel had the information for almost a year, but he could not explain why the responses were only provided to SPX now.

Q. Now, we've talked so far about all these events that happened in 2002 and earlier —

A. Yes.

Q. -- in your interrogatory response?

A. Yes.

Q. You were in possession of all these facts that you claim to be in possession of today when they occurred five, six and seven years ago, right?

A. Yes.

Q. Is there a reason why this interrogatory was only drafted to us yesterday?

A. Which interrogatory?

Q. The one that we've been reading there.

A. This one here?

Q. Yes.

A. I can't answer that.

Q. You don't know?
A. No.

Q. Don't you think it would have been important to give it to us early?

A. I'm not a lawyer.

Q. Oh, your lawyers did this?

A. This document?

Q. Yes.

A. Lawyers did this, yeah.

Q. But you [had] the facts to support all of this stuff when they happened?

Mr. Doerr: Objection, asked and answered

Q. With you notes and everything, right, sir?

A. Yeah. I had the information to help them draft this. And they had the information to draft this.

Q. Many, many months ago?

A. Yeah, I expect so.

(Dkt. #128, Ex. 9, Beal Deposition, pp. 297-98; *see also*, p. 32 testifying that Bartec's lawyers "have had all this information in one form or another, so – Q. For the last almost year, right? A. Yes).
Bartec has never presented any testimony or other evidence contrary to that of Mr. Beal.

During the hearing, Bartec's counsel accused SPX of misrepresenting the record.

Mr. Lorelli makes much of a disclosure that – that testimony of the witness that said the disclosure is made at the beginning of the year. But he knows fully well that in the subsequent deposition when he specifically asked were there any corrections to his prior testimony, the witness said yeah, I told you it was at the beginning of the year, it wasn't.

(Transcript, p. 61).

Yet, the subsequent testimony of Mr. Beal does not match the assertions of defense

counsel.  When asked whether he had any corrections to his earlier testimony, Mr. Beal stated

no.

Q. Okay, you recall being deposed in this case about a month ago?

A. Yes.

Q. In this room?

A. Yes.

Q. When you were deposed a month ago you have answers that were truthful and honest, right?

A. Yes.

Q. And no reason today to believe that your answers then weren't truthful and honest and complete?

A. No.

(Dkt. #151, Ex. C, 30(b)(6) (Beal), pp. 3-4).

Regardless, Bartec should have investigated whether its "own activities" invalidated the claims of the '796 patent long before October 17, 2007. Bartec provides the following unsupported statement in its supplemental submission for allegedly not knowing: "It was not until mid-October that a further review of the documents and information produced to-date showed that some of these activities had a nexus with the United States and thus provided a basis to assert an independent invalidity contention based on the sale or use of BXR tools in the United States." (Dkt. #148, p. 5). Bartec fails to give a sufficient explanation of why this information and contentions were treated differently than other information, such as the BXR HLF 2000 manual, they previously asserted.

Moreover, Bartec was motivated to locate the contested information when it received a cease and desist letter from G-5 Electronics, the predecessor to SPX in the ownership of the '796 patent, in November of 2005. In response to that letter, Bartec USA and Bartec Auto ID, Ltd. searched its files and presented what it believed to be relevant prior art. Bartec USA and Auto

ID met extensively with counsel and provided Harness, Dickey and Pierce with information in late 2005 and early 2006. Indeed, "there was quite a regular flow of information between Mr. Massey and Bartec Auto ID, Ltd. in the context of furnishing Mr. Massey with evidence that Bartec Auto ID Ltd.'s prior activities and products that he relies on for invalidity." (Dkt. #151, Ex. E, Bartec 30(b)(6) (Holloway), pp. 61-62). As explained in the deposition of Bartec USA:

> Q. In fact, Bartec Auto ID Limited was motivated to furnish Mr. Massey, evidence of activities and products of Bartec Auto ID towards this invalidity analysis, correct?
>
> A. That's our policy, yes.
>
> Q. So Mr. Massey had full access to the relevant activities and products of Bartec Auto ID in the time frame of this letter of Exhibit 198, that time being January 31, 2006 or shortly thereafter, correct?
>
> Mr. Doerr: Objection to form.
>
> A. He had access to that information earlier than that. That's what I referred to earlier.

*Id.*

In response, Harness, Dickey and Pierce provided a written opinion for both Bartec Auto ID, Ltd. and Bartec USA. (Dkt. #151, Ex. F, letter provided to G-5).

> Q. It's implicit that when Mr. Massey issued this letter, he would have had access to the "activities and products of Bartec Auto ID Limited" that he relied upon in support of the invalidity positions he expresses, correct?
>
> Mr. Doerr: Same objection [form].
>
> A. Yes.

*Id.* at 61.

Bartec has provided no explanation of why the information that it attempts to disclose in October 2007 was not located and considered in January 2006 when Bartec and Harness, Dickey and Pierce were motivated to review Bartec's "own activities."

SPX served an interrogatory on Bartec USA in late 2006. In responding to this interrogatory, Bartec USA was under an obligation to "furnish such information as is available to the party." Fed. R. Civ. P. 33(a). As explained at the hearing, the same owners, Colin Webb and Charles Beal, own both Bartec USA and Bartec Auto ID, Ltd. The information of Bartec's "own activities" was available, just as it was when Harness, Dickey and Pierce created its opinion of counsel.

In its original response, Bartec provided only the cited art and the art referenced in the Harness, Dickey and Pierce letter. SPX moved to compel Bartec to provide details on all of its invalidity contentions. On April 2, 2007, Bartec Auto ID, Ltd. was added to the lawsuit (Dkt. #19). On April 4, 2007, prior to the hearing on Plaintiff's motion to compel, Bartec provided additional references it contended invalidated the '796 patent. On April 18, 2007, the Court ordered that Bartec's invalidity contentions be provided in detail. Even though the exact language of the April 18, 2007, Order did not relate to providing all of Bartec's invalidity contentions, that relief was requested by SPX in its motion, but obviated because Bartec allegedly "provided Plaintiff only with an identification of its positions" just prior to the hearing. (Dkt #25).[7] On May 2, 2007, Bartec provided a response in conjunction with the Court's April 18, 2007, Order. On June 1, 2007, Bartec provided additional references it contended invalidated the '796 patent — and provided them in chart form.

---

[7] As recorded in the Statement of Resolution and Unresolved Issues: "In summary, SPX seeks an Order requiring a full and complete answer to Interrogatory No. 1 within seven (7) days so that discovery in this case can move forward. Withholding information regarding Bartec's invalidity defenses is only intended to prejudice SPX's discovery. SPX requires not only identification of positions, but the basis behind them as requested in Interrogatory No. 1 to proceed in discovery." (Dkt. #151, Ex. G, p. 4).

On July 16, 2007, Bartec Auto ID, Ltd. provided an identical response as Bartec USA. On July 18, 2007, the Court issued another Order requiring detailed production. On July 23, 2007, Bartec not only provided more detail, but Bartec also provided additional references it contended invalidated the '796 patent — and provided them in chart form.

Three months passed, and only on October 17, 2007, did Bartec provide any interrogatory response regarding its "own activities."[8] The discovery cut-off in this case was November 30, 2007 (Dkt. #98). This extensive and unexplained delay, through multiple opportunities to disclose Bartec's "own activities," is particularly difficult to accept. As stated by Bartec's counsel at the hearing: "It has always been Bartec's contention that its own activities anticipated. They've know that from the get go." (Transcript, p. 58). If that were the case, its invalidity positions should have been disclosed at the "get go," or in one of the six times that it supplemented its response to Interrogatory No. 1. Bartec's present excuse that it learned of its "own activities" in October 2007 seems disingenuous — especially when it was coupled with an avalanche of unsearchable documents, never-before produced, just weeks before the discovery cut-off.

There is a need for some type of diligence in discovery supplementation, otherwise Rule 26(e) has no meaning. *See, e.g., Paul Mercury Ins. Co. v. Capitol Sprinkler Inspection*, 2007 WL 1589495, #9 (D.D.C. June 1, 2007) ("Rule 26 imposes a duty on [Defendant]; it grants [it]

---

[8] The disclosures also lacked the detail, i.e., "chart" format that was ordered to be provided in response to Interrogatory No. 1. On the same day that Bartec presented its assertions of invalidity based on its "own activities" Bartec (including Bartec USA LLC and Bartec Auto ID, Ltd.) also supplemented the chart that disclosed prior art in the manner required by the Court's April 18, 2007, and May 25, 2007, Orders. Bartec was required to comply with the Court's orders on the particularity of disclosure as it did for three additional references, but Bartec failed to do so regarding its "own activities."

no right to produce information in a belated fashion."). Indeed, Rule 26(e) does not bestow upon litigants unfettered freedom to rely on supplements . . . even if the rule's pretrial time limit is satisfied."); (*Recycling Sciences Int'l, Inc. v. Genmor Industries, Inc*., 1999 WL 160060, *11 (N.D. Ill. 1999) (finding a Rule 26(e) violation where "defendants did not show due diligence in searching for prior art.") *Wright v. Aargo Security Systems, Inc*., 2001 WL 1035139 (S.D.N.Y. 2001) (finding violation of 26(e) where failure to supplement was "due to a lack of diligence" but did not exclude evidence because the identities of witnesses was otherwise made known).

Here, the delay to October 2007 was unjustified and the supplementation was not seasonable or "in a timely manner." As explained above, both Bartec and Harness, Dickey and Pierce have had numerous occasions to supplement and did not. Almost two years past since the cease and desist letter and through multiple opportunities to supplement, Bartec failed to act. Accordingly, Plaintiff's motion is **GRANTED** and **IT IS ORDERED** that Bartec's "own activities" as presented in the October 17, 2007, Supplemental Interrogatory Response (Dkt. #151, Exhibit A, pp. 7-9) is excluded.

### 2. Bartec's Two Manuals

Bartec's counsel asserts that BAID 690, *et seq*., dated 2001, and BAID 2254, *et seq*., dated August 2002, are printed publications and therefore prior art to the '796 Patent under 35 U.S.C. § 102 (Dkt. #176, Ex. 1 & Ex. 2). Yet, this case proceeded through the majority of discovery without any claim by Defendants that these Bartec documents were prior art. Defendants did not identify these documents as patent-defeating prior art in response to Plaintiff's discovery requests nor in their Court ordered interrogatory responses. Only at the end

of discovery were these Bartec documents asserted as prior art "printed publications."[9]

Here, Defendants must prove by clear and convincing evidence that the asserted documents are "printed publications" under 35 U.S.C. § 102. This requires that Defendants prove that these documents were accessible to the public. *In re Hall*, 781 F.2d 897, 899 (Fed. Cir. 1986) ("'public accessibility' has been called the touchstone in determining whether a reference constitutes a 'printed publication' bar."); *SRI Int'l, Inc. v. Internet Security Systems, Inc*., 1186, 1195 (Fed. Cir. 2008). Defendants must also prove that these documents could be located by the interested public. *Constant v. Advanced Micro-Devices, Inc*., 848 F.2d 1560, 1568 (Fed. Cir. 1988). Moreover, Defendants must prove that these documents were actually disseminated. *Norian Corp. v. Stryker Corp*., 363 F.3d 1321, 1330 (Fed. Cir. 2004) (overturing jury verdict where abstract was available by request, but such a request and dissemination had not been shown).

If Bartec published a document in 2001 or 2002, it should have known about it and should have disclosed it long before October of 2007. Indeed, when Harness, Dickey and Pierce were investigating in late 2005, such documents would have been provided. In its supplemental submission Bartec contends that these documents were "identified" in July and August of 2007. Bartec provides no explanation as to why these documents were not produced earlier or why they were never disclosed on its invalidity position.

---

[9] Bartec's counsel submitted interrogatory responses claiming that these documents were printed publication and prior art under 35 U.S.C. § 102 on November 26, 2007, but these interrogatories were never verified (Dkt. #176, Ex. 4, pp. 7-10). As noted above, the discovery cut-off in this case was November 30, 2007 (Dkt. #98). Moreover, these responses failed to demonstrate fully the *prima facie* evidence, described above, satisfying the requirements for a "printed publication."

These documents were given to Bartec's Expert, Dr. Val Liepa, and Harness, Dickey and Pierce — not Bartec — told him they were "printed publications." As recited at the December 5, 2007, hearing from the deposition of Dr. Liepa:

> Q. Let me see if I have captured this right. It is not your opinion that those documents are printed publications, correct?
>
> Mr. McClaughry: Asked and answered, objection.
>
> A. No. it is not my opinion that they are printed publications. I did not make opinion that they are printed publications. I did not question nor verify that they are valid publications.

(Dkt. #151, Ex. H, Liepa dep. pp. 32-33).

Moreover, on the manuals generally, there is 30(b)(6) testimony that the manuals were not printed publications.

> Q. You haven't put [the manuals] somewhere that anybody could find them, right? Like if I went out, looking for one of these manuals, I couldn't find it?
>
> Mr. Doerr: Objection, form.
>
> A. That's probably correct, yeah.
>
> * * *
>
> Q. We talked about the manuals a little bit, do you recall that?
>
> A. We did talk about the manuals, yes.
>
> Q. And you stated that your manuals are not published anywhere, right?
>
> Mr. Doerr: Objection, form.
>
> A. I think I did say that, yes.
>
> Q. My question for you is, sir, throughout the course of the testimony I know you've answered truthfully and honestly.
>
> A. I've tried to.

Q. You've tried to. And your testimony about the user manuals not being published anywhere, you're not going to let any lawyer change your testimony and try to convince you to say something else, are you?

Mr. Doerr: Objection, form, and argumentative, and not a proper question for a deposition.

Q. You've still got to answer my question though.

A. Well, I – that's my opinion until someone explains that I've made a mistake.

Q. Okay. But sitting here today you know of no mistake you're making on that?

A. No.

Q. And if you were sitting in front of a jury today, because that's really how your testimony is, in front of a jury and in front of a judge, you would testify the same way, isn't that right?

A. I think it would be, yes.

(Dkt. #151, Ex. D, Bartec 30(b)(6) (Webb), pp. 249-250, 258-259).

On BAID 2254, *et seq*., Bartec's position is even weaker. Bartec Auto ID, Ltd. provided interrogatory responses that this document was a "printed publication" in "at least the U.S. and U.K. as of August 2002." (Dkt. #151, Ex. I, p. 8). Bartec Auto ID's 30(b)(6) testimony contradicted that non-verified interrogatory response.

A. We definitely did not have that document in August 2002 . . . That's just – it's wrong.

* * *

Q. Right. And that's how you know the date was wrong because of how it relates to your other records?

A. Yes. Because it's too early.

(Dkt. #151, Ex. C, Bartec Auto ID, Ltd.'s 30(b)(6) (Beal), pp. 258, 307-308).

The Federal Circuit addressed a similar scenario in *Fraige v. Am.-Nat'l Watermattress*

*Corp.*, 996 F.2d 295 (Fed. Cir. 1993). In *Fraige*, the defendant in a patent infringement suit attempted to fabricate prior art. The jury in that case returned a special verdict in defendant's favor, finding four separate grounds of invalidity. The district court denied a Rule 60(b)(3) motion on the ground that the fabrication could only "have affected two of the jury's findings of invalidity." *Id.* at 298. The Federal Circuit held that this was an abuse of discretion as the fabrication has transcended the entire proceeding. A litigant who engages in misconduct, like improperly touting a document as a printed publication as of a certain date when it is not, should "not be permitted the benefit of calculation, which can be little better than speculation, as to the extent of the wrong inflicted upon his opponent." *Id.* at 299 (quoting *Minneapolis, St. paul & Sault Ste. Marie Ry. Co. Moquin*, 283 U.S. 520, 521-22 (1931).

### 3. Prejudice to Plaintiffs

As explained at the hearing, the belated production of Bartec's "own activities" and manuals has severely prejudiced SPX. Unlike a prior U.S. Patent that can be authenticated and confirmed, Bartec's "own activities" are the type of prior art that requires detailed discovery. In this case, it may require third party international discovery. The problem is that these may be defenses that require a full discovery period. This is why SPX moved to compel invalidity positions early in this case: "Full and complete answers explaining Bartec's pleaded positions are required so that discovery can proceed in this case." (Dkt. #13, p. 1). As also discussed at the December 5, 2007, hearing, SPX would have liked to have known about the prior art being asserted before the *Markman* briefing and hearing. SPX selected claim terms in dispute based on its understanding of the infringement and validity issues in the case — disputes that were materially altered shortly after SPX and Bartec finished its briefing on the *Markman* issues.

Indeed, that is why courts with local patent rules require validity contentions be provided before *Markman*, and that they can only be modified with "good cause" — which certainly was not demonstrated here.  *See, e.g., E.D. Tex. Patent* L.R. 3.3, 3.6(b) (Dkt. #151, Ex. J).

SPX's counsel explained the substantial prejudice suffered at the hearing:

Mr. Lorelli: But the point is, [] we've got a mass of whatever it might be that isn't in accordance with the orders that you have issued from the Court that were provided to us six months at the end of discovery. And it is precisely the type of assertions that need detailed discovery.

Like I indicated to you before, the assertion that a certain document is a printed publication because you look at it and it has a copyright date of August 2002. Well, we've got to look into that. We can't take the attorneys at their – on their word. When we asked the client, they said that date's wrong.

And – and here we have an issue of three pages, no documents identified. And we're at the end of – and we're at the end of discovery. Discovery is over now.

And I know I made reference to the 200,000 e-mails in my motion.  And honestly, Your Honor, I could care less about the e-mails, it's the contentions that I care about and what I have to defend against. Because it's unfair that I'm getting whatever these – I – it's standard discovery. I still don't know what those contentions are, but I'm getting them with a mass of document productions.

And when I asked in a 30(b)(6) deposition what documents support that? It's in there, it's in there somewhere. And if I could hand up what I have had is Slide No. 29. It shows the number of documents that have been produced in this case by the defendants over the course of the litigation.

And as you can see, up until five weeks ago, we understood what was – you know, we understood that – what the universe was. And of course now when we have no time for – for any discovery or to be able to investigate whether when they say it's a printed publication, whether it actually is. What are we to do?

So here we are today, discovery is over. And we still do not know what their invalidity contentions are with regards to anything that was not charted.

The Court: So this argument is just the prejudice argument with regard to why the item was in your left hand column if allowed to go forward would substantially prejudice you and require reopening of discovery.

Mr. Lorelli: Yes, Your Honor.

(Transcript, pp. 51-53).

At Bartec's doing, SPX was provided with six weeks left in discovery to figure out Bartec's invalidity positions that were never charted as required by the Court's Orders. SPX would be required to: (1) investigate the legal nature of the claims (not identified), (2) investigate the documents being relied upon (not identified), (3) depose authors and custodians of the alleged prior art documents (not identified), (4) investigate the authenticity and accuracy of alleged prior art documents (not identified), (5) seek third party discovery, possibly international (none identified), and (6) complete all of this is just six weeks from receiving a vague assertion.

In *TData Inc. v. Aircraft Technical Publishers*, 2007 WL 433295, *1 (S.D. Ohio Feb. 5, 2007), the court was confronted with a defendant that did not timely produce prior art supporting an unenforceabiltiy contention in defending a patent infringement suit. The patentee sought to exclude the material based on Rule 26(e) and a related discovery order. *Id.* The Court did not decide the issue on Rule 26(e) grounds, but noted that an issue was whether the defendant "had the material in question." *Id*. at *2. Here, Bartec appears to have had the material in question, as Bartec claims it is its "own activities." Bartec seeks to hide behind an assertion that it did not know that it was a "contention," but this is unavailing.

The court in *TData* ultimately excluded the material because the defendant failed to comply with a court order regarding the production of the prior art. The same is true here. We have two court orders that require "for the prior art that you're going to use for invalidity questions you had to make this detail of a disclosure as to why it invalidates certain portion of

22

the claim and which claim." (Transcript, p. 38). Bartec has decided not to provide this information for its "own activities" and for the two alleged "printed publications." Bartec's disregard for the Court's Orders mandates exclusion of these defenses. Alternatively, Bartec failed to fulfill its Rule 26(e) duty to supplement its disclosures and responses "in a timely manner," and thus under Rule 37(c)(1) where the failure is not harmless, the evidence can be excluded. Accordingly, Plaintiff's motion is **GRANTED** and **IT IS ORDERED** that (1) Bartec's "own activities" as set forth on pages 7-9 of Dkt. #151, Ex. A, and (2) BAID 2254 and BAID 690 as "printed publications." are excluded.

## III.    ORDER

For the reasons indicated above, **IT IS ORDERED** that Plaintiff's motion to exclude is **GRANTED**. The parties to this action may object to and seek review of this Order, but are required to file any objections within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Any objections are required to specify the part of the Order to which the party objects and state the basis of the objection. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

**SO ORDERED.**

Date: April 10, 2008                        s/Steven D. Pepe
Ann Arbor, Michigan                     United States Magistrate Judge

Certificate of Service

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on April 10, 2008 .

<u>s/Jermaine Creary</u>

Deputy Clerk