UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


SPX CORPORATION,
a Delaware corporation,

             Plaintiff,　　　　　　　　　CASE NO. 06-14888

vs.

                                      DISTRICT JUDGE DAVID M. LAWSON
                                      MAGISTRATE JUDGE STEVEN D. PEPE

BARTEC USA, LLC, a Michigan company,
BARTEC AUTO ID LIMITED, a United Kingdom corporation,
SCHRADER-BRIDGEPORT INTERNATIONAL, INC.,
A Delaware corporation, GENERAL PARTS, INC.,
A North Carolina corporation, and
MYERS TIRE SUPPLY DISTRIBUTION, INC.,
An Ohio corporation,

             Defendants.
_____/

## ORDER GRANTING PLAINTIFF'S MOTION TO STRIKE (DKT. #169)

In this patent infringement action, Plaintiff SPX Corporation ("SPX") alleges that Defendants infringe the rights of U.S. Patent No. 6,904,796 to Pacsai *et al.* ('796).[1] Plaintiff claims that the Bartec DBL, DEG, and DSW tools (the accused tools) infringe '796. Plaintiff alleges that the sale of the Bartec DBL and the Bartec DEG tools infringes claims 1, 4, 7-12 and 17-19, and that the sale of the Bartec DSW infringes claims 1, 4, 7-12 and 20-22. Defendants

---

[1] The primary Defendants in this case are Bartec USA, LLC and Bartec Auto ID, Ltd. As the name implies, these are related entities. The owners of Bartec Auto ID, Ltd. also own Bartec USA, LLC. Bartec USA, LLC was the sole and original Defendant in this action filed October 30, 2006. After learning that Bartec USA, LLC was a shell company in the United States for Bartec Auto ID, Ltd., based in the United Kingdom, SPX amended the Complaint on April 2, 2007, to add Bartec Auto ID, Ltd.

1

have counterclaimed that '796 is invalid and not infringed.

On February 19, 2008, SPX moved to strike paragraph 5 of the Declaration of Defendants' Expert, Valdis Liepa, Ph.D., presented as Dkt. #163-5 in Defendants' January 25, 2008, filing for summary judgment (Dkt. #169).[2] Plaintiff's motion was referred for hearing and determination on February 21, 2008, pursuant to 28 U.S.C. § 636(b)(1)(A) (Dkt. #172). A hearing was held on April 4, 2008, at which all unresolved issues were heard. For the reasons stated on the record and indicated below, it is **ORDERED** that Plaintiff's motion is **GRANTED.**

## I. BACKGROUND FACTS

The Court's August 22, 2007, Case Management and Scheduling Order required Defendants to respond to Plaintiff's Proposed Claims Construction Statement by September 14, 2007, and therein to identify all extrinsic evidence, including expert testimony, that was to be used to support their claim construction positions (Dkt. #98). In its disclosure, Defendants identified their position that the claim limitation "means for generating modulated signals" was indefinite, but did not identify Dr. Valdis Liepa as offering supporting testimony. On September 19, 2007, after a conference with Plaintiff's counsel on the Joint Claim Chart, defense counsel wrote Plaintiff's counsel noting that Plaintiff had designated "testimony of Ernie Pacsai" as extrinsic evidence for a number of claim limitations, and designated "Dr.Val Lieba for rebuttal testimony," although counsel indicated he did "not anticipate that exert testimony will be needed." (Dkt. #187, Ex. 6).

The Court's Case Management and Scheduling Order also required the parties to submit

---

[2] In his Expert Report, Dr. Liepa indicates that he has been retained by Defendants Bartec USA, LLC and Bartec Auto ID, Ltd. on behalf of all the Defendants (*See*, Dkt. #128, Ex. 6).

a Joint Claim Construction Statement on September 28, 2007, including the information above (Dkt. #98). Again, Defendants did not identify Dr. Valdis Liepa as offering supporting testimony on the claim term "means for generating modulated signals." Only testimony of Dr. Gregory Davis and Ernest Pacsai was identified as extrinsic evidence supporting Defendants' claims interpretation on the "means for generating a modulated signal" limitation.

In its October 3, 2007, opening Claim Construction Brief , Defendants asserted that both the limitations "means for generating continuous wave signals" and "means for generating modulated signals" are "indefinite and incapable of construction" and did not meet the requirements of 35 U.S.C. § 112, ¶ 6 (Dkt. #110, p. 16-22 & 22-26). Because patents are presumed valid under 35 U.S.C. § 282, Defendants must prove by a clear and convincing evidence that the claims of the patent-in-suit are invalid for indefiniteness. *Budde v. Harley-Davidson, Inc.,* 250 F.3d 1369, 1376-77 (Fed. Cir. 2001). In this brief, Defendants relied on argument and case authority to assert their invalid for indefiniteness defense. They did not submit any extrinsic evidence with regard to the term "means for generating modulated signals," which is the limitation involved in the current motion.

For the first time in their responsive claim construction brief, Defendants provided an October 5, 2007, declaration of Dr. Valdis Liepa on both the limitations "means for generating continuous wave signals" and "means for generating modulated signals" as extrinsic evidence that they are both indefinite and incapable of construction. The Declaration made the following statements related to the limitation "means for generating modulated signals":

> 7. The specification states that microprocessors execute computer programs for controlling the tire positioning tool. The specification also states that the microprocessor can provide the modulation to the frequency generator circuitry but does not describe any program, algorithm or instructions used by the microprocessor

3

to control the frequency generating circuitry for generating modulated signals.

8. The terms "microprocessor" or "microcontroller" describe a digital device that is able to perform timing, arithmetic, logic and decision-making operations when given a specific set of instructions for doing so. Without describing the instructions given to the microprocessor and a modulating circuit, one skilled in the art would not understand the specification to disclose a specific circuit or device or a specific approach used to generate modulated signals.

(Dkt. #118, Ex. Q).

On October 10, 2007, the day after Defendants submitted the Liepa declaration, SPX filed a notice of objection and moved to strike the declaration (Dkt. #113). SPX's filing first objected that Dr. Liepa's declaration and the other extrinsic evidence submitted (dictionaries and treatises) were not proper rebuttal evidence and should have been presented in their opening claim construction brief. *Id.* at. p 1. It asserts "a rebuttal is not the proper place to raise issues and present evidence for the first time. *Sundberg v. Ladder*, 189 F. Supp.2d 671, 682-83 (E.D. Mich. 2002)"[citing United *States v. Perkins,* 994 F.2d 1184, 1191 (6th Cir1993)]. *Id*. at p. 2. It noted that Dr. Liepa and the other extrinsic evidence were not identified either in "Bartec's Claim Construction Statement or in the parties' Joint Claim Construction chart filed with the Court on September 28, 2007," which required identification of the extrinsic evidence each side would use to support its position on individual claim terms. *Id.* at p.2.

Bartec responded to these objections on October 11, 2007, claiming:

Plaintiff asks the Court to exclude the declaration testimony of Defendant's technical expert, Valdis Liepa, and five electrical engineering references on the grounds that it was not earlier identified by Defendants and does not rebut Plaintiff's evidence.[1]

Defendants expressly designated Dr. Val Liepa for rebuttal to Plaintiff's expert testimony on September 19, 2007. *See,* Exhibit A, Doerr letter to Lorelli. A review of the Liepa declaration (Exhibit Q of Dkt. No. 112) clearly shows that it is submitted to controvert the conclusory statements of Plaintiff's experts. *See*, Defendant's response, page 8 (Dkt. No. 116).

4

> 1. Plaintiff first designated the testimony of its' expert Gregory Davis in its submission of the Joint Statement to the Court on October 3, 2007, without previous notice to Defendants.

(Dkt. #119).

Yet, the portion of Bartec's Response Brief on claims construction that Defendants assert was proper rebuttal was the following:

> Plaintiff's experts claim that "'[f]requency generating circuitry' is very common in the industry, is simple to construct, and is learned early in electronics training as a basic circuit." *See* Decl. of Pacsai, ¶ 12, Ex. 7 of Pl.'s Claim Construction Brief (Dkt. No. 108).8 Defendant's expert Valdis Liepa,9 agrees, stating "[t]here are various known circuits or devices (chips) that use different approaches for generating a continuous wave signal." *See* Ex. Q, ¶ 5. But this fact does not end the inquiry.
>
>          * * *
>
> As Liepa further notes "**none of the known circuits or devices is described in the specification of '796 patent**. The elements and their interconnection are also not disclosed." See Ex. Q, ¶ 5 (emphasis added). Thus, "[w]ithout further details, one skilled in the art would not understand the specification to disclose a specific circuit or device, or a specific approach used to generate continuous wave signals." *Id.*

(Dkt. #116, p. 7-8).

Without needing to decide whether Dr. Liepa's October 5, 2007, declaration was proper rebuttal on the issue of the indefiniteness of the limitation "means for generating continuous wave signals," that portion of the brief does not refer to anything in Plaintiff's initial claims construction brief on the limitation "means for generating modulated signals" that warranted any extrinsic rebuttal evidence. Thus, while defense counsel's September 19, 2007, letter identifies Dr. Liepa as a rebuttal witness for any "testimony of Ernie Pacsai," that letter would not have allowed Defendants to provide Dr. Liepa testimony on this "means for generating modulated signals" limitation issue as rebuttal testimony because defense counsel points to no testimony

from Ernest Pacsai or other extrinsic evidence in Plaintiff's initial claims construction brief warranting rebuttal.

Thus, had this issue (Dkt. #113) been referred to me on Plaintiff's "objection" or in a "motion to strike," paragraphs 7 and 8 of the Liepa October 5, 2007, declaration, would have been stricken as being improper rebuttal evidence in accordance with the reasoning of Judge Lawson in his *Sundberg* opinion cited above. Defendants bear the burden of proof on their indefiniteness claim regarding the limitation "means for generating modulated signals," and if they chose not to use Dr. Liepa's declaration paragraphs 7 and 8 as part of their initial brief on claims construction, it was improper to submit evidence only in reply when these paragraphs of Dr. Liepa's October 5, 2007, declaration are not proper rebuttal testimony. Nor should they make a slight modification of those paragraphs in Dr. Liepa's declaration and file it as an exhibit to their summary judgment motion when such an exhibit is totally unnecessary.

On October 12, 2007, SPX subpoenaed Dr. Liepa to depose him on the declaration that was submitted supporting Defendants' claim construction positions (Dkt. #126-3). Defendants moved for a protective order and refused to provide Dr. Liepa for deposition prior to the claim construction hearing (Dkt. #126; *see also*, Dkt. #127, SPX's Response).

These issues were ripe for determination at the claim construction hearing held by the Court on October 25, 2007.

The Court entertained discussion on the propriety of Dr. Liepa's declaration, SPX's motion to strike the declaration, and Defendants' motion for a protective order to prevent SPX from probing the statements made (Dkt. #169, Ex. 1, 10/25/07 Hearing Transcript, pp. 35-42). The discussion concluded with Defendants withdrawing the declaration of Dr. Liepa.

> THE COURT: All right. I understand your position. Mr. McClaughry, do you stand by the declaration or do you want to withdraw it?
>
> MR. McCLAUGHRY: Well, Your Honor, I will withdraw it, because I don't think we need it. If you want to consider the extrinsic evidence that's been presented, if you consider the purely in rebuttal to what these guys said.
>
> MR. LORELLI: That's fine with us, Your Honor. We can resolve this today.
>
> THE COURT: All right. I'll consider the declaration withdrawn. I'll deny the motion for protective order as moot. And with respect to taking Dr. Liepa's deposition for other purposes, I'll leave it to you to work out a date if you chose to do that. Is that acceptable with everyone?
>
> MR. LORELLI: Yes, Your Honor.
>
> MR. McCLAUGHRY: Yes, Your Honor.
>
> THE COURT: Very well.

(Dkt. #169, Ex. 1, p. 42:6-25).

Defendants subsequently re-introduced a January 22, 2008, declaration from Dr. Liepa that contained language nearly identical to paragraphs 7 and 8 that were previously withdrawn in the face of SPX's objections (Dkt. #163-5). The bolded language below is identical to that withdrawn by Defendants on October 25, 2007.

> 5. Pacsai '796 describes that a microprocessor can provide modulation to frequency generator circuitry (5:55-56). Pacsai '796 **does not describe any program, algorithm or instructions used by the microprocessor to control the frequency generator circuitry for generating modulated signals. Without describing the instructions given to the microprocessor, one skilled in the art would not understand the specification to disclose a specific** structure or **approach used to generate modulated signals**.

(Dkt. #163-5).

Defendants submitted the Liepa declaration, including the above paragraph #5 on January 25, 2008, nearly three months after it expressly withdrew nearly identical language from consideration — and months after the close of discovery. Plaintiff argues that the testimony

7

was prohibited from examination as Defendants refused to produce Dr. Liepa for a deposition prior to the claim construction hearing. Moreover, because a substantially similar statement was expressly withdrawn by Defendants at the claims construction hearing, Plaintiff contends that paragraph 5 of the Declaration of Valdis Liepa (Dkt. #163-5) must be stricken.

Defendants' motion has as its lead reason for summary judgment the prior holding of this Court on claims construction regarding "means for generating modulated signals":

> Defendants move this Court for summary judgment on three bases: (1) that all asserted claims of Plaintiff's patent, U.S. Patent No. 6,904,796 to Pacsai et al. ("Pacsai '796") are invalid based on the Court's holding that the term "means for generating modulated signals" is void for indefiniteness; (2) that the accused tools do not infringe any of the asserted claims of Pacsai '796; and (3) that all claims of Pacsai '796 are obviou

(Dkt. #163, Defendants' Motion for Summary Judgment, p. 2).

Defendants' brief unnecessarily references paragraph 5 of Dr. Liepa's January 22, 2008, declaration.

> All asserted claims have been construed as requiring two or more means selected from the group consisting of "[1] a magnet, [2] a valve core depressor, [3] means for generating continuous wave signals, and [4] **means for generating modulated signals.**" Claim Construction Order, p. 11-12 (emphasis added).2 Per the Court's claim construction, "means for generating modulated signals" is indefinite. See also, Ex. C, Liepa Decl., ¶ 5 (one skilled in the art cannot determine a specific structure or approach for generating modulated signals as claimed in Pacsai '796 because the specification fails to disclose any program, algorithm or instructions given to the microprocessor).

(Dkt. #163, Defendants' Brief in Support of Motion for Summary Judgment, p. 2).

After Defendants state this Court's prior ruling on claims construction, i.e., the defense states "Per the Court's claim construction, 'means for generating modulated signals' is indefinite," nothing further is needed for the Court to grant summary judgment on invalidity of '796 for indefiniteness. In their brief, Defendants acknowledge that this is purely a question of

8

law flowing from the claims construction ruling.[3] At the claims construction hearing there was discussion on whether Defendants even needed to file a separate summary judgment motion. Defense counsel noted that if the claims do not meet the means plus function requirement under § 112 ¶ 6, "[w]hat would naturally flow from that would be, then, under 112, 2, the claim would be indefinite for failing to particularly point and distinctly claim the invention." (Hearing Transcript, Dkt. #187-4, p.34:20-25; p. 35:1). When asked whether a separate motion for summary judgment was even necessary if the Court held the claims indefinite, defense counsel stated: "Technically, it would be, it would be a very *pro forma* motion, but technically yes." *Id*. at p. 35:8-10.

Yet, what is clear is that all that was needed in the summary judgment motion was reciting this Court prior holding --"Per the Court's claim construction, 'means for generating modulated signals' is indefinite" – and asking for summary judgment of invalidity for indefiniteness of the limitation "means for generating modulated signals." Dr. Liepa's paragraph 5 of his January 22, 2008, declaration was unnecessary and was another attempt to get into the court record evidence that it chose not to put in its initial submissions on claims construction and voluntarily chose to withdraw at the claims construction hearing. This was not proper rebuttal evidence at the October 25, 2007, claim construction hearing and it is unnecessary in what defense counsel has acknowledged is a *"pro forma"* summary judgment motion.

---

[3] "A determination of indefiniteness is a legal conclusion that is drawn from the court's performance of its duty as the construer of patent claims[, and] therefore, like claim construction, is a question of law." *Atmel Corp. v. Information Storage Devices, Inc.*, 198 F.3d 1374, 1378 (Fed. Cir. 1999)." (Dkt. #163, Defendants' Brief in Support of Motion for Summary Judgment, p. 1).

9

Defendants acknowledge that the first Liepa Declaration was withdrawn for claim construction purposes (Dkt. #187, p. 8.), but they assert its withdrawal was expressly limited to claim construction and did not extend to summary judgment briefing. Therefore, Defendants argue that they can use the precise withdrawn language for other briefings. Defendants fail to acknowledge, however, that paragraph 5 of the Liepa Declaration is only relevant to claim construction and appears to have only been re-introduced to "reinforce" the Court's ruling on claim construction purposes. Yet, this is a back door effort to get into the record on claims construction that which Defendants chose not to put in their initial brief on claims construction and that which they withdrew from consideration at the claims construction hearing.

Defendants use the re-introduced paragraph 5 in two briefings: (1) Defendants' Response To SPX's Motion For Reconsideration Of The Court Order Construing Claims,[4] and (2) Defendants' Motion For Summary Judgment Of Invalidity.

When defense counsel withdrew the October 2007 Liepa declaration and its paragraphs 7 and 8 at the October 25, 2007, hearing, the Court denied Plaintiff's motion objecting to it as "moot." Again, had the Court ruled on the merits of whether Dr. Liepa's paragraph's 7 and 8 were proper rebuttal evidence, it is likely the motion would have been granted under the *Sundberg* case for the reasons noted above. The Court noted that Plaintiff's counsel could take Liepa's deposition "for other purposes." Plaintiff's counsel reasonably assumed that "for other purposes" meant deposing him on his opinions other than those expressed in paragraphs 7 and 8 of the October 2007 declaration on the indefiniteness of the limitation "means for generating

---

[4] Defendants' response to SPX's Motion for Reconsideration included citation to paragraph 5 of the Liepa Declaration (Dkt. #166, p. 1, n.3).

modulated signals." Dr. Liepa gave multiple opinions on other subjects including prior art as well as non-infringement.

Acting in reliance on Defendants' withdrawal of the first Liepa declaration on the indefiniteness of the limitation "means for generating modulated signals," Plaintiff did not question Dr. Liepa at his November 15, 2007, deposition on the subject matter of his withdrawn paragraphs 7 and 8 of his October declaration. Defendants dispute this fact, and reproduce an excerpt from page of 62 of the transcript of the Liepa deposition of November 15, 2007, which they submit in support of their contention that Plaintiff deposed Dr. Liepa on the entirety of his Expert Report, including the opinions it now seeks to exclude (Dkt. #187, p. 13). Yet, Defendants reproduce only the answer, and not any underlying question. The full Q-and-A in context, spanning page 61, line 16 through page 62, line 21, of the Liepa deposition transcript, is reproduced as follows:

> Q. Okay. What else did you talk to Mr. Beale about?
>
> A. The process of generating continuous LF signal and modulated signal.
>
> Q. And you put that in your rebuttal report, right?
>
> A. Correct.
>
> Q. That information was learned from Mr. Beale?
>
> A. Yes.
>
> Q. You didn't do that on your own study?
>
> A. One is I am not qualified to actually -- I don't have the latest experience to analyze microprocessor software. And such was not provided to me, how the tool is programmed to do various things.
>
> Q. Wait a second though. Isn't your opinion that the way the microprocessor is designed, it doesn't infringe; isn't that your opinion?

11

A. The way the microprocessor is designed?

Q. The Bartec tools don't infringe; isn't that your opinion?

A. Your question is confusing.

Q. Why?

A. The way the microprocessor is designed -- microprocessor is a little chip, a logical device. It gets instructions and it performs these instructions. Motorola makes -- you know, dozens of manufacturers make them. Each one is a little different. Okay? Microprocessors can -- you know, they can perform many kinds of functions. Can it do that one, A? Yes. Can it do B? Yes. Can it do C? Yes. Can it do altogether at the same time? Yes.

The context of the answer found on page 13 of the Opposition Brief shows the underlying question was not directed to the withdrawn paragraphs 7 and 8 of the October Leipa declaration — contrary to the assertions of Defendants on pages 12 and 13 of their Opposition Brief. Accordingly, it is apparent that Dr. Liepa was not deposed on the subject matter of his first (withdrawn) declaration.

Because Defendants are seeking to reintroduce a statement they previously withdrew for substantially similar purposes, and because Plaintiff would suffer undue prejudice by that reintroduction, Plaintiff's motion to strike is **GRANTED.**

### III.    ORDER

For the reasons indicated above, **IT IS ORDERED** that Plaintiff's motion is **GRANTED**. Accordingly, paragraph 5 of the second Liepa Declaration of January 22, 2008, is stricken from the record in Exhibit C to Dkt. #163. (Dkt. #163-5) and all references to it in Dkt #163 and in Dkt. #166 should be disregarded.

The parties to this action may object to and seek review of this Order, but are required to file any objections within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §

636(b)(1) and E.D. Mich. LR 72.1(d)(2). Any objections are required to specify the part of the Order to which the party objects and state the basis of the objection. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

**SO ORDERED.**

Date: April 11, 2008  s/Steven D. Pepe
Ann Arbor, Michigan  United States Magistrate Judge

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing *Order* was served on the attorneys and/or parties of record by electronic means or U.S. Mail on April 11, 2008.

s/ Alissa Greer
Case Manager to Magistrate
Judge Steven D. Pepe
(734) 741-2298